# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JORDAN AYRES,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:24-cv-01055-RDP |
| **CITY OF BIRMINGHAM,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion to Dismiss, filed on January 13, 2025. (Doc. # 25). The Motion (Doc. # 25) has been fully briefed (Docs. # 25, 26, 28) and is now ripe for a decision. For the reasons discussed below, the complaint fails to state a claim upon which relief can be granted, so the Motion to Dismiss (Doc. # 25) is due to be granted.

**I.     Background**

This case involves Plaintiff's allegation that Defendant retaliated against him for opposing race discrimination or filing race discrimination complaints. (Doc. # 23 ¶¶ 13-14, 17-31). The race discrimination complaints alleged that after Plaintiff (a white male) shaved his head, his supervisor made a comment about whether Plaintiff was planning a workplace shooting. (*Id.* ¶¶ 10-12, 15). Specifically, Plaintiff alleges that while he was employed as a detective for the Special Victims Unit in Birmingham, Alabama, he shaved his head due to a bad haircut and a dermatological condition. (*Id.* ¶¶ 2, 19). Plaintiff also alleges that on or around March 12, 2024, his supervisor (Sergeant Heather Campbell) told him that she was instructed by her supervisor (Lieutenant Marion Benson) "to determine whether he had ulterior motives for shaving his head such as a

workplace shooting." (*Id.* ¶ 10). Plaintiff alleges that he had told Benson "that the reason for [him] shaving his head was due to a messed-up haircut and for medical reasons." (*Id.* ¶ 11). Plaintiff complained to Campbell and "Lieutenant Otis," who advised Plaintiff to file a complaint with human resources. (*Id.* ¶¶ 13-14).

The Administrative Clerk, Ketera Mickens, allegedly made a statement on March 12, 2024, describing a conversation she had with Benson about Plaintiff's shaving of his head and eyebrows and whether there was an Active Shooter Plan. (*Id.* ¶ 15). The statement (termed a "letter") allegedly noted that someone named "Detective Lacally" had expressed concern about Plaintiff's personal life. (*Id.* ¶ 16).

On March 21, 2024, Plaintiff allegedly submitted an internal complaint with two attachments and a cover letter to human resources, alleging race discrimination. (*Id.* ¶ 17). On March 22, 2024, Plaintiff received an email acknowledging the filing of the complaint and informing him that he would be interviewed. (*Id.* ¶ 18). Attachment B to the internal complaint detailed what happened when Campbell questioned Plaintiff (using the date March 11) and asserted that Plaintiff found Benson's instructions to Campbell "extremely offensive and racially motivated." (*Id.* ¶ 19). It continued, "I feel these instructions suggest that I have intentions to commit violence based on the color of my skin and the choice of a hairstyle that is within grooming policy." (*Id.*). The attachment also noted that Plaintiff "felt the need to disclose that I have been seeking treatment from a dermatologist for a skin condition, which is also very embarrassing." (*Id.*). Plaintiff alleges that he never received any update about the status of his complaint and was never interviewed or visually inspected by human resources. (*Id.* ¶¶ 21-22). Attachment A to the internal complaint detailed that "it is extremely hurtful that I am being singled out and racially discriminated against." (*Id.* ¶ 20). Plaintiff also alleges that to his knowledge, no one was ever

2

interviewed about Plaintiff posing a threat to the department due to his grooming habits or personal demeanor, or about Detective Lacally's alleged statement expressing concerns about Plaintiff's personal life. (*Id.* ¶ 23).

Plaintiff resigned on April 25, 2024, and his resignation became effective on May 17, 2024. (*Id.* ¶ 24). Plaintiff alleges he had "no contact or any correspondence from Human Resources" during this roughly one-month period, nor during any time up to when his resignation was effective. (*Id.*). Plaintiff also alleges that he requested a meeting with human resources to review his file and information about the investigation, but that this request was "denied." (*Id.*).

Plaintiff next alleges that on April 29, 2024, he received flowers with an anonymous note congratulating him on his resignation and stating that he would not be missed. (*Id.* ¶ 25). Allegedly, Plaintiff acquired a receipt for these flowers that showed Gosney/Clemente as the sender. (*Id.* ¶ 26). According to the complaint, Plaintiff had previously reported Gosney/Clemente for requesting case information for personal reasons, and she had resigned in lieu of termination. (*Id.* ¶ 26). Plaintiff alleges that he provided human resources with the receipt for the flowers and that human resources gave him a "receipt notice" indicating that the investigation into this complaint would conclude in 30 days and that Plaintiff would be interviewed. (*Id.* ¶¶ 26-27). Despite this representation, Plaintiff alleges he was never interviewed. (*Id.* ¶ 28).

Plaintiff alleges that this failure to investigate his internal complaint "led Plainti[ff] to believe he was in a hostile environment, that his safety was at stake." (*Id.* ¶ 30). Plaintiff also alleges that the failure to investigate "left the impression that Plaintiff was a racist and or a white supremacist with psychological problems and forced him to resign and accept a lower paying job." (*Id.* ¶ 31). Plaintiff further alleges that he "feared that the unrebutted allegations would put his safety in jeopardy if a violent shootout were to occur." (*Id.*). Plaintiff next alleges that human

resources' "failure to meet with him even after a request or to let him see his personnel file bolstered his belief that he was being retaliated against." (*Id.*).

Plaintiff filed a complaint in federal court on August 1, 2024, and filed an amended complaint on December 29, 2024, alleging one claim of retaliation for participating in a protected activity in violation of 42 U.S.C. § 2000e-3(a)

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires a plaintiff to allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). In addition, "a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the court determines that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claims are due to be dismissed. *Id.* at 570.

## III.     Analysis

Defendant makes one argument as to why Plaintiff's claims should be dismissed: Plaintiff has failed to allege a cognizable retaliation claim because a failure to investigate is not an adverse employment action, and Plaintiff did not adequately plead facts showing a causal connection. (Doc. # 25 at 3-8). Plaintiff responded that he suffered harm through a failure to investigate his internal complaint and a denial of his request to review his file, and that this harm was causally connected to the protected activity. (Doc. # 26 at 5-11). Below, the court considers these arguments.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." *McMillian v. Postmaster Gen., U.S. Postal Serv.*, 634 Fed. App'x 274, 277 (11th Cir. 2015) (quoting *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

### A.     Statutorily Protected Expression

Regarding the first prima facie element, Plaintiff must show that he engaged in statutorily protected expression under Title VII. Plaintiff alleges that he filed an internal human resources complaint on March 21, 2024. (Doc. # 23 ¶ 17). Defendant concedes that Plaintiff engaged in "statutorily protected expression." (Doc. # 25 at 4). Therefore, the court need not further address this first element of his prima facie retaliation claim.

### B.     Adverse Employment Action

Regarding the second element, Plaintiff has not pleaded an adverse employment action. Title VII's anti-retaliation provision provides that "an employer may not take action against an employee for bringing or aiding a Title VII charge." 42 U.S.C. § 2000e-3(a). The Supreme Court has held that this provision only protects an individual "from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). For that reason, it must be shown "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (in turn quoting *Washington v. Ill. Dept. of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005))). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* (quoting *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Eleventh Circuit precedent indicates that a failure to investigate a plaintiff's complaint against another person is not retaliatory if there is no basis to conclude that the action is taken "against" the plaintiff. *Entrekin v. City of Panama City Fla.*, 376 Fed. App'x 987, 995 (11th Cir.

6

2010). District courts applying this precedent have held similarly. *See Stafford v. Duval Cnty. Pub. Schs.*, 720 F. Supp. 3d 1216, 1229 (M.D. Fla. 2024) ("the failure to investigate a complaint is generally not construed as retaliation for making the same complaint"); *Smith v. Salvation Army*, 2023 WL 2252380, at *13 (N.D. Ala. Feb. 27, 2023) ("[A]n employer's failure to investigate an employee's complaint is not an adverse employment action for purposes of a discrimination or a retaliation claim if the failure to investigate did not harm the complaining employee.") (citing *Entrekin*, 376 Fed. App'x at 995). The Second Circuit has reached a similar conclusion. *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("in a run-of-the-mine case such as this one, an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint").

Plaintiff has not alleged any facts indicating that human resources' failure to investigate or denial of his request to review his file were actions taken against him. Nor has he alleged any facts that show that the failure to investigate or delay in investigating harmed him. At most, Plaintiff asserts that the failure to investigate "led Plainti[ff] to believe he was in a hostile environment, that his safety was at stake" (Doc. # 23 ¶ 30), and that it "left the impression that Plaintiff was a racist and or a white supremacist with psychological problems and forced him to resign and accept a lower paying job." (*Id.* ¶ 31). These allegations are inadequate to show harm because they are Plaintiff's subjective impressions. Plaintiff does not explain how it would be objectively reasonable to conclude that concerns about him being an active shooter risk would equate to him being "racist" or "a white supremacist." Moreover, Plaintiff does not explain how a failure to investigate could produce the impression that Plaintiff was racist or a white supremacist – a failure to investigate means human resources had not yet drawn *any* conclusions about the merit of his

7

complaint. These allegations therefore do not illustrate any factual basis showing how he was harmed by the delay in investigating his complaint.

Plaintiff also does not plead facts to show "that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. Plaintiff submitted his complaint on March 21, 2024. The next day human resources acknowledged that they had received Plaintiff's complaint. Approximately one month later, on April 25, 2024, he submitted his resignation. The failure of human resources to investigate Plaintiff's March 21, 2024 complaint before Plaintiff tendered his resignation and its alleged denial of his request to review his file do not rise to such a level that it "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See id.* Delays in investigating a complaint or in responding to a request to review one's file are "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* Holding otherwise would require the court to conclude that an objectively reasonable worker might be dissuaded from making a charge of discrimination if the worker knew that some period would go by without that charge being investigated. Plaintiff has not offered any factual allegations to allow the court to draw a conclusion about how this delay in investigating would affect an objectively reasonable employee. Rather, as noted above, Plaintiff has only pleaded allegations about his subjective impression about the failure to investigate – not about any actions taken against him.

To show that a failure to investigate is an adverse employment action, Plaintiff must plead facts showing that the failure to investigate was an action taken against him – in other words, one that resulted in some harm to him. This harm must be such that it would dissuade an objectively reasonable worker from filing a similar complaint. Plaintiff failed to plead sufficient facts to show this.

The recent Supreme Court decision in *Muldrow v. City of St. Louis* does not change this result. 601 U.S. 346 (2024). In *Muldrow*, the Court rejected the Eight Circuit's interpretation that an employee claiming discrimination due to a job transfer must show a materially significant disadvantage caused by the transfer. *Id.* at 353. In doing so, the Court held that plaintiffs are only required to show that the transfer was "disadvantageous," but do not need to demonstrate that such harm was "materially significant." *Id.* at 354-55. *Muldrow* does not change the result in this case because that case only eliminated the heightened bar of "materially significant" for *discrimination* cases. The Court explicitly distinguished between the "materially adverse" and "'significant' harm" standard for "Title VII's separate anti-retaliation provision" and the lower bar for Title VII's discrimination provision. *See id.* at 357 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Further, the court reiterates that even if *Muldrow*'s lower bar of "disadvantageous" was applied to Plaintiff's retaliation claim, Plaintiff would still fail to meet that standard. Plaintiff has not pleaded that the failure to investigate was disadvantageous because, simply put, he has not pleaded that it was a harm done to him or that he was harmed.[1]

For these reasons, Plaintiff has failed to plead an adverse employment action.

### C.     Causal Connection

Regarding the third element, without any adverse employment action to point to, Plaintiff cannot show a causal connection. But, even if Plaintiff had sufficiently pleaded an adverse employment action (and, to be clear, he has not), he has not alleged that the failure to investigate was *in retaliation* for his internal complaint. To survive a 12(b)(6) motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the

---

[1] Outside of Plaintiff's subjective (and illogical) views, there is no plausible basis to allege that any delay in investigating his claims created a hostile work environment because it left an impression that Plaintiff was a racist, a white supremist, an active shooter risk, or had psychological problems. (*Cf.* Doc. # 26 at 8).

defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Plaintiff did not just fail to plead a plausible causal connection; he did not plead any causal connection at all. Therefore, there is no basis to infer that Defendant is liable for retaliation.

## IV.    Conclusion

Because Plaintiff has failed to adequately plead the second and third elements of a prima facie retaliation claim, the complaint is due to be dismissed for failure to state a claim under Rule 12(b)(6). Therefore, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. # 25) is due to be granted. An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this February 4, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE